UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Shari Davis, | ) | Civil Action No.: 2:17-cv-01392-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff Shari Davis ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Plaintiff's claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"). The matter is before the Court for review of the Report and Recommendation of United States Magistrate Judge Mary Gordon Baker, made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2) for the District of South Carolina. The Magistrate Judge recommends the Court affirm the Commissioner's decision. [ECF #25]. Plaintiff filed an objection to the Magistrate Judge's recommendation. [ECF #29]. Defendant responded to these objections on September 4, 2018. [ECF #30].

## Factual Findings and Procedural History

The facts, including the medical timeline and evidence contained within the record, are adequately set forth by the Magistrate Judge in the Report and Recommendation. [ECF #25, pp. 6-10]. Briefly stated, Plaintiff was forty-two years old on the date of her alleged onset of disability, April 12, 2010. Plaintiff filed an application for disability insurance benefits and supplemental security income on July 17, 2013, alleging she suffers from left knee/ankle injury, high cholesterol, osteoarthritis,

osteopenia/osteoporosis, sciatica, depression, spinal injury, and acid reflux. [ECF #10-2, p. 36].[1]

On August 5, 2011, Plaintiff was admitted to the emergency room for an injury to her left leg. Plaintiff offered widely differing accounts as to what caused this acute injury.[2] Nonetheless, Plaintiff's X-ray showed arthritic change, but otherwise did not show anything acute at that time. [Ex. 1F]. Plaintiff was diagnosed with dislocation of the patella and a sprained ligament. After Plaintiff was in a car accident in September 2011, Plaintiff was examined by Dr. Cleave Ham, who found no evidence of an acute fracture, her bony structures were grossly intact, but she had some soft tissue swelling. [Ex. 3F]. On October 21, 2011, an MRI of Plaintiff's right knee revealed a "mild sprain" of the MCL, a "mild partial" tear of the ACL and PCL ligaments, and a partial tear of the biceps femoral tendon. [Ex. 3F]. Dr. Dennis Fisher indicated on a pre-printed evaluation form that Plaintiff was "unable to work" but otherwise did not give a specific reason for this comment, nor did he give a diagnosis or prognosis of Plaintiff's condition. [Ex. 4F].

On November 5, 2012, Plaintiff was treated at Roper St. Francis for an evaluation of her left knee, and those records indicate no significant swelling and normal alignment. [Ex. 7F]. After this time

---

[1] As an initial matter, this Court agrees with the Magistrate Judge's discussion of the relevant time period for Plaintiff's DIB claims and SSI claims. The relevant time period for the sake of DIB benefits is from the alleged disability onset date through the date upon which a claimant's insurance status expires. For Plaintiff's claim, that is the time period between April 12, 2010 through December 31, 2010. The Commissioner argues that during that time period, Plaintiff did not provide any information regarding treatment of her alleged impairments, therefore her DIB claim is unsustainable. Until June 25, 2015, Plaintiff was represented by counsel who submitted medical records on her behalf. Plaintiff was also questions at the hearing by the ALJ, allowing her to further discuss her medical history. The Commissioner argues Plaintiff does not carry the burden of establishing disability during this time period. Plaintiff does not provide a response to this argument. As for SSI benefits, the relevant time period spans the first day of the month after filing an application through the date of the ALJ's decision. Here, that time frame is August 1, 2013 through March 14, 2016.

[2] For example, the ER medical records indicate, "plaintiff presents afer falling from standing while at home." [Ex. 1F]. Follow-up appointment notes state that she presented with patella dislocation after a "fall while running." [Ex. 2F]. At a physical therapy appointment, the notes indicate that she sustained the injury "during a fall while running and/or taking care of cousin who has quadriplegia." [Ex. 4F]. Notes from another doctor's office state that she sustained a left knee injury when she "fell through a weak floor." [Ex. 7F].

period, there was a significant gap in treatment, which Plaintiff attributes to transportation issues. [ECF #9-2, p. 71]. However, on July 16, 2013 and July 30, 2013, Plaintiff sought emergency care treatment for "moderate" back pain. After Plaintiff presented to the Medical University of South Carolina ("MUSC") on October 17, 2014 with left facial pain, she was diagnosed as having "TMJ" of her jaw. [Ex. 16F]. In 2015, Plaintiff sought treatment for pain, at which time she was placed on Plaquenil for possible lupus. [Ex. 15F]. Plaintiff later saw a rheumatologist who determined Plaintiff did not have lupus. [Ex. 16F]. While Plaintiff testified at her hearing that she was diagnosed with rheumatoid arthritis, records reveal that her RF and ESR returned normal results, and the medical notes indicate that here symptoms were not completely consistent with rheumatoid arthritis. [Ex. 16F]. Throughout the rest of 2015, Plaintiff sought treatment for a urinary issue, left ankle and shoulder pain (which was reported as improved by medication), and back pain.

At her hearing, Plaintiff testified that she lives alone, that she can shop for groceries, complete household chores, take care of her dog, attend church, and manage her funds. She testified that she has a permit to drive and sometimes borrows a friend's car. She further testified that after her alleged onset date, she "volunteered" at a bar restaurant. One of her doctor's notes indicates that in 2015, after her alleged onset date, she was still braiding hair, which she stated helped with her hand stiffness. State agency consultants opined that she could perform light work.

The Social Security Administration denied Plaintiff's application initially and on reconsideration, so Plaintiff requested a hearing before the Administrative Law Judge ("ALJ"). After several reschedules, Plaintiff appeared before the ALJ on February 23, 2016. The ALJ denied Plaintiff's claim on March 14, 2016, finding that Plaintiff was not under a disability as defined in the Social Security Act, as amended. [ECF #9-2, p. 45]. In the decision, the ALJ determined that, although

3

Plaintiff suffers from "severe" impairments of obesity, osteoarthritis, and degenerative disc disease, she still retained the residual functional capacity to perform medium work, with certain specified limitations. Specifically, the ALJ's findings were as follows:

> (1) The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

> (2) The claimant has not engaged in substantial gainful activity since April 12, 2010, the alleged onset date. (20 CFR 404.1571 *et seq.*, 416.971 *et seq.*).

> (3) The claimant has the following severe impairments: obesity; osteoarthritis; and degenerative disc disease (20 CFR 404.1520(c) and 20 CFR 416.920(c)).

> (4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

> (5) After careful consideration of the entire record, I find that the claimant has the residual capacity to perform medium work, as defined in 20 C.F.R. 404.1567(c) and 416.967(c) except occasional operation of foot controls with left lower extremity; occasional climbing of ramps and stairs; never climbing ladders, ropes or scaffolds; frequent stooping, kneeling, crouching, crawling; and the need to avoid hazards such as unprotected heights.

> (6) The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

> (7) The claimant was born on July 30, 1967 and was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

> (8) The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

> (9) Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

4

(10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1529, 404.1569(a), 416.969 and 416.969(a)).

(11) The claimant has not been under a disability, as defined in the Social Security Act, from April 12, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[ECF #9-2, pp. 33-45].

Plaintiff requested a review of the ALJ's decision. The Appeals Council denied Plaintiff's request to review the ALJ's decision, making the decision of the ALJ the final decision of the Commissioner. On May 26, 2017, Plaintiff filed a complaint seeking judicial review of the Commissioner's decision. [ECF #1]. Both Plaintiff and Defendant filed briefs [ECF #13; ECF #14; ECF #22], and the Magistrate Judge issued her Report and Recommendation on July 31, 2018, recommending that the Commissioner's decision be affirmed. [ECF #25, p. 23]. The Magistrate Judge recommends affirming the Commissioner's decision because the record contains substantial evidence to support the decision that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. [ECF #25, p.23]. Plaintiff filed objections on August 21, 2018. [ECF #29]. Defendant responded to these objections on September 4, 2018. [ECF #30].

## **Standard of Review**

### I.    **Judicial Review of the Commissioner's Findings**

The federal judiciary has a limited role in the administrative scheme established by the Act, which provides the Commissioner's findings "shall be conclusive" if they are "supported by substantial evidence." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

This statutorily mandated standard precludes a de novo review of the factual circumstances that substitutes the Court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *Hicks v. Gardner*, 393 F.2d 299, 302 (4th Cir. 1968). The Court must uphold the Commissioner's factual findings "if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) (stating that even if the Court disagrees with the Commissioner's decision, the Court must uphold the decision if substantial evidence supports it). This standard of review does not require, however, mechanical acceptance of the Commissioner's findings. *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). The Court "must not abdicate [its] responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner]'s findings, and that [her] conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

## II.    The Court's Review of the Magistrate Judge's Report and Recommendation

The Magistrate Judge makes only a recommendation to the Court. The Magistrate Judge's recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court must conduct a de novo review of those portions of the Report and Recommendation ("R & R") to which specific objections are made, and it may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Court must engage in a de novo review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the Court need not conduct a de novo review when

a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate [Judge]'s proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of specific objections to the R & R, the Court reviews only for clear error, *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005), and the Court need not give any explanation for adopting the Magistrate Judge's recommendation. *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983).

## Applicable Law

Under the Act, Plaintiff's eligibility for the sought-after benefits hinges on whether she is under a "disability." 42 U.S.C. § 423(a). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). The claimant bears the ultimate burden to prove disability. *Preston v. Heckler*, 769 F.2d 988, 991 n.* (4th Cir. 1985). The claimant may establish a prima facie case of disability based solely upon medical evidence by demonstrating that her impairments meet or equal the medical criteria set forth in Appendix 1 of Subpart P of Part 404 of Title 20 of the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(d) & 416.920(d).

If such a showing is not possible, a claimant may also establish a prima facie case of disability by proving she could not perform her customary occupation as the result of physical or mental impairments. *See Taylor v. Weinberger*, 512 F.2d 664, 666-68 (4th Cir. 1975). This approach is premised on the claimant's inability to resolve the question solely on medical considerations, and it is therefore necessary to consider the medical evidence in conjunction with certain vocational factors. 20 C.F.R. §§ 404.1560(a) & § 416.960(a). These factors include the claimant's (1) residual functional

capacity, (2) age, (3) education, (4) work experience, and (5) the existence of work "in significant numbers in the national economy" that the individual can perform. *Id.* §§ 404.1560(a), 404.1563, 404.1564, 404.1565, 404.1566, 416.960(a), 416.963, 416.964, 416.965, & 416.966. If an assessment of the claimant's residual functional capacity leads to the conclusion that she can no longer perform her previous work, it then becomes necessary to determine whether the claimant can perform some other type of work, taking into account remaining vocational factors. *Id.* §§ 404.1560(c)(1) & 416.960(c)(1). Appendix 2 of Subpart P governs the interrelation between these vocational factors.

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity; (2) whether she has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[3] (4) whether such impairment prevents claimant from performing past relevant work;[4] and (5) whether the impairment prevents her from doing substantial gainful activity. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis.

---

[3] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that her impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish her impairment is disabling at Step 3).

[4] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). Once an individual has made a prima facie showing of disability by establishing the inability to return to past relevant work, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a vocational expert demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to past relevant work. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

## Analysis

Plaintiff's objections focus almost exclusively on the circumstances surrounding the hearing held on February 23, 2016. Plaintiff objects to the R&R's recommendation that this Court find Plaintiff received a full and fair hearing for an unrepresented claimant and fully developed the record. [ECF #29, p. 1]. Specifically, Plaintiff argues that she made good faith efforts to secure representation, but the ALJ denied her the opportunity for counsel, was incorrect in assuming she lacked candor with the ALJ,

and did not adequately explain the hearing procedures to Plaintiff. This Court has reviewed the record and first notes that Plaintiff filed her application for both DIB and SSI benefits through counsel. She was represented by counsel until June 25, 2015, when her former counsel withdrew. Therefore, the first hearing she was scheduled for on July 13, 2015 was rescheduled, and she received a second hearing date on November 18, 2015. Plaintiff had nearly five months to obtain counsel before this hearing, and further, was provided information regarding the right to representation . [Ex. 17B]. The ALJ's notes indicate that Plaintiff did not timely appear for this second hearing, although Plaintiff testified that she "thought she came early." Nonetheless, Plaintiff signed an Acknowledgment of Postponement In Order to Obtain Representation, which is dated November 18, 2015. [ECF #9-2, p. 6]. Plaintiff's hearing was again re-scheduled for November 30, 2015. Plaintiff appeared at her hearing on November 30, 2015 unrepresented by counsel. According to the hearing transcript, Plaintiff asked for a postponement to obtain a representative. [ECF #9-2, p. 53]. Apparently at that time, the ALJ told Plaintiff there would be no further postponements, absent extenuating circumstances. [ECF #9-2, p. 54]. Plaintiff was rescheduled again for a hearing on February 23, 2016. She again came unrepresented by counsel, despite having had an additional three months to obtain new counsel.

Plaintiff's attempts to obtain counsel include: contacting an individual named Mr. Paul and leaving him messages an unspecified number of times. [ECF #9-2, p. 55]. Plaintiff stated she spoke to a woman named Christine, presumably at Mr. Paul's office, who, according to Plaintiff explained to her that she would not take her case because her claim would be denied, and that she should wait six months, continue to seek treatment, and reapply for benefits. [ECF #9-2, p. 56]. Plaintiff further testified that she received a "Request to Withdraw Your Request for a Hearing" from Christine, which Plaintiff refused to sign. Plaintiff was unable to remember the name of this law firm or the full name

of anybody she spoke to at this office.

When the ALJ informed Plaintiff that she was going to proceed with the hearing since she did not wish to sign the withdrawal paperwork, Plaintiff then advised the ALJ that she had a packet from another attorney "that was willing to take the case." [ECF #9-2, p. 58]. Plaintiff told the ALJ she had a signed Fee Agreement with Premier Disability Service, that she signed the agreement online, and that the attorney sent her papers for her to fill out. [ECF #9-2, p. 59]. This paperwork was dated February 4th, and Plaintiff told the ALJ that she had not yet returned to the firm as of the date of the hearing. The ALJ went off the record to contact Premier Disability Services and inquire about their status of representation. According to the hearing transcript, someone at that office indicated that Plaintiff was notified on February 12, 2016 that they would not represent her. [ECF #9-2, p. 60].[5] After this exchange, the ALJ decided to move forward with the hearing.

The Fourth Circuit has determined that while lack of representation by counsel does not necessarily require a finding that the claimant did not obtain a full or fair hearing, if the absence of counsel created clear prejudice or unfairness, remand is proper. *Sims v. Harris*, 631 F.2d 26, 27-28 (4th Cir. 1980).This Court's review of the record reveals that Plaintiff had the benefit of counsel from the time she filed her applications until June 25, 2015. Prior to the time that her counsel withdrew, Plaintiff's counsel had already submitted more than three hundred pages of medical records. After such time that Plaintiff's counsel withdrew, Plaintiff had approximately eight (8) months to obtain new counsel. In fact, after receiving several reschedules, Plaintiff executed an Acknowledgment of

---

[5] Plaintiff objects to the Magistrate Judge's adoption of the Commissioner's language that Plaintiff lacked candor with the Court, based upon this attempt at securing representation. After the ALJ questioned whether Plaintiff had given her inaccurate information, Plaintiff told the ALJ she spoke to a "Mike," but the ALJ decided to move forward. Plaintiff argues her contact at Premier Disability "should matter" before assuming she lacked candor with the Court. After considering the length of time Plaintiff had to obtain counsel, the fact that she was only able to provide evidence that she began seeking counsel a few weeks before the hearing, and the interaction regarding her alleged representation by Premier Disability Services, this Court does not find this argument compelling.

Postponement In Order to Obtain Representation in November of 2015. [Ex. 19B]. This document clearly explains that a claimant is entitled to one postponement in order to obtain a representative and that any subsequent hearing will be rescheduled at least twenty (20) days from today. [Ex 19B]. Moreover, the acknowledgment provides, "I have been advised both orally and in writing, that if I do not have a representative by the next scheduled hearing, I must be prepared to proceed with the hearing without a representative, and, absent extraordinary circumstances, no further postponement will be granted." [Ex. 19B]. Further, Plaintiff was repeatedly advised of her right to counsel, even though the ALJ has no duty to insist the claimant must have counsel in order to proceed. *Marsh v. Harris*, 632 F.2d 296, 300 (4th Cir. 1980).

Plaintiff analogizes her case to the circumstances discussed in the Report and Recommendation issued in *Bush v. Colvin*, No. 1:14-4917, 2016 WL 1238006 (March 22, 2016), later adopted by the District Court. In that case, at a plaintiff's second scheduled hearing, the plaintiff informed the ALJ that he had tried to contact three attorneys to take his case, two of which were unable to take his case.[6] However, the plaintiff informed the ALJ that he was meeting with another attorney that afternoon, and that he was also being referred to an orthopedist based on recent findings. *Id.* at *11. Further, that plaintiff indicated he could not understand the hearing process, and in fact, the ALJ indicated on the record that the plaintiff appeared to have trouble understanding." *Id.* at *11.

After reviewing the entire record as a whole, this Court does not agree that a remand is warranted under *Bush v. Colvin*. Unlike the facts in *Bush*, the ALJ made the determination to continue with the hearing after indicating she believed Plaintiff had provided her inaccurate information about her attempts to obtain counsel. Further, Plaintiff had the benefit of several rescheduled hearings, which

---

[6] In that case, one attorney declined to take his case the week before the hearing occurred, and another attorney could not meet with him prior to the hearing because he had a dental appointment.

provided her approximately eight months to secure new counsel. Plaintiff has documents showing her efforts to obtain counsel the same month that the hearing was scheduled, despite having had since November to obtain counsel. Further, Plaintiff had previously been informed that she would have to proceed without an attorney if she did not obtain counsel by the date of her last scheduled hearing. Plaintiff was undoubtedly aware that she would not receive another reschedule, she had been given several opportunities to obtain counsel, and the representative from Premier Disability Services informed the Court that Plaintiff knew approximately two weeks prior to her hearing date that they would not take her case.[7] The circumstances in *Bush* are thus factually distinguishable from this case. Accordingly, this Court agrees with the Magistrate Judge that the cases are factually dissimilar, and *Bush* does not require remand.[8]

Moreover, Plaintiff argues that the Magistrate Judge's determination that she "chose" to proceed without counsel is in error. The Magistrate Judge, in determining that Plaintiff received a full and fair hearing, explained that Plaintiff submitted medical records through counsel, received the benefit of the ALJ's repeated attempts to reschedule her hearing in order to accommodate additional efforts to seek counsel, and despite having had ample time to do so, came to the hearing unrepresented. [ECF #25, p. 15]. As this Court previously discussed, the record reflects the reasonable understanding by the ALJ that Plaintiff did not diligently pursue efforts to obtain counsel, despite the fact that she was aware that she would no longer receive the benefit of continued. Plaintiff came to the hearing with additional documents to add to her case file, and indeed told the ALJ that she had not returned her paperwork to

---

[7] This Court notes that Plaintiff appears to indicate at the hearing that she had not returned her paperwork back to Premier Disability Service by the date of the hearing, further supporting the ALJ's determination that Plaintiff was less than candid about her efforts to obtain representation.

[8] This Court also notes that it appears that the plaintiff in *Bush* never had the opportunity to consult with counsel, whereas until the first scheduled hearing date, Plaintiff had attorney of record who submitted her medical records on her behalf.

Premier Disability Services. In other words, it was reasonable for the ALJ to conclude that Plaintiff came to the hearing prepared to move forward, as she knew she was unrepresented, came with additional documents, and was not willing to waive her right to a hearing. This Court therefore does not find that the Magistrate Judge's description of Plaintiff "choosing" to be unrepresented warrants remand.

Finally, Plaintiff's argues generally that the ALJ's bias prevented a full or fair hearing. This Court has carefully considered Plaintiff's argument that the ALJ's comments that other claimants are unable to get a hearing because of her multiple reschedules show a bias toward Plaintiff. While the Plaintiff's contention that the ALJ's comments were "unwarranted" are well-taken, this Court does not find that the comments reflect a bias or inability remain impartial to Plaintiff under these circumstances. First, the ALJ had previously afforded Plaintiff at least three rescheduled hearing dates, despite the fact that there was at least some indication that Plaintiff came late for one hearing date. Second, the ALJ appeared agreeable to offering Plaintiff yet another reschedule, had Plaintiff actually obtained counsel through Premier Disability Services, as she had represented to the Court. [ECF #9-2, p. 58].[9] Third, the ALJ asked Plaintiff about additional documents she brought with her, and the ALJ made those a part of the record. This Court therefore does not find that the ALJ's decision to proceed with the case was not unreasonable or unfair under the circumstances of this case.

Plaintiff's cites to two cases, *Jumper v. Colvin,* No. 5:14-112, 2015 WL 4921482 (W.D.N.C. 2015) and *Kearney v. Astrue*, No. 5:09-cv-178, 730 F.Supp. 2d 482 (E.D.N.C. 2010), where remand was warranted when the ALJ failed to adequately explain the hearing procedures to pro se claimants.

---

[9] The ALJ moved forward with the hearing upon finding out that Plaintiff's assertion that an attorney was "willing to take the case" was not corroborated when Premier Disability Services was contacted. Again, this was more than eight months after Plaintiff found out that her initial counsel withdrew from the case.

Those cases are factually inapposite to this case. In *Jumper v. Colvin,* district court found that an plaintiff's lack of representation prevented her from knowing she had the ability to question the vocational expert at her hearing about a conflict between the expert's testimony and the Dictionary of Occupational Titles ("DOT") descriptions on cross-examination. 2015 WL 4921482, at *3. The ALJ failed to resolve the conflict between the VE testimony and the DOT descriptions in the decision. 2015 WL 4921482, at *4. When her counsel raised the issue of the unresolved conflict between the VE testimony and the DOT descriptions on appeal, the defendant argued the plaintiff's failure to cross-examine the VE at the hearing evidenced the plaintiff's agreement that there was no such conflict. *Id.* The court in *Jumper* therefore found clear prejudice in that case, because the plaintiff did not have an opportunity to present evidence on this issue.

Similarly, in *Kearney v. Astrue*, the district court determined that the plaintiff suffered prejudice because the representative did not submit any evidence concerning a potential mental impairment that could have supported a disability claim. 730 F. Supp. 2d at 484. Additionally, the ALJ did not inquire into such a mental impairment, despite hearing testimony that Plaintiff attended special classes in school. *Kearney* is thus distinguishable in that Plaintiff does not set forth an argument that she was prejudiced due to a failure on the part of the ALJ to consider certain evidence at the hearing. In fact, the ALJ made the additional documents Plaintiff brought a part of the record.

This Court therefore disagrees with Plaintiff's contention that under *Jumper* and *Kearney*, the ALJ's decision to conduct a hearing when Plaintiff did not have counsel and failed to instruct Plaintiff that she could cross-examine the vocational expert warrants remand, because Plaintiff has not made the same showing of prejudice by her lack of representation in this case.[10] Further, this Court agrees with

---

[10] Plaintiff has not argued that her lack of counsel at the hearing has prevented her from raising any issues that arose with the testimony of the vocational expert in this case.

the Magistrate Judge's recommendation that the ALJ conducted a full and fair hearing without the infection of bias. Accordingly, this Court overrules Plaintiff's objection that the Magistrate Judge incorrectly found she was afforded a full and fair hearing. Indeed, this Court does not find that the ALJ's decision to proceed with the case was not unreasonable or unfair under the circumstances of this case.

Initially, Plaintiff raised two other issues with the ALJ's decision: (1) that the ALJ failed to fully develop the record; and (2) that the ALJ's RFC is not supported by substantial evidence. The Magistrate Judge analyzed each of these arguments and determined that the ALJ's decision was supported by substantial evidence. Plaintiff argues in the objections that the ALJ did not fully develop the record. In an earlier brief , Plaintiff argued the ALJ should have requested a mental health evaluation, as well as further develop the record with respect to Plaintiff's orthopedic issues. An ALJ has a duty to develop the record if there is ambiguous evidence or when the record does not allow for a proper evaluation of the case. *Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001). In developing the record, an ALJ must inquire fully into each issue. *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980). A review of the record reveals that the record was neither ambiguous or inadequate. Here, the ALJ reviewed medical records, considered the opinions of the medical sources, and evaluated mental and physical assessments, and considered Plaintiff's own testimony in determining the record was adequate to render a decision. The ALJ also introduced additional documents into the record at the hearing. The ALJ apparently did not make the determination to seek additional consultative examinations with respect to Plaintiff's mental impairments. After reviewing the ALJ's decision, this Court finds that the ALJ adequately developed the record. Plaintiff does not explicitly object to the remainder of the analysis found within the R&R. Therefore, after reviewing the other arguments considered by the Magistrate Judge, this Court finds no

clear error with the analysis made and the subsequent decision that the ALJ's decision was supported by substantial evidence. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

## <u>Conclusion</u>

The Court has thoroughly reviewed the entire record as a whole, including the administrative transcript, the briefs, the Magistrate Judge's R & R, Plaintiff's objections to the R & R, Defendant's response to Plaintiff's objections, and the applicable law. For the foregoing reasons, the Court adopts the recommendation of the Magistrate Judge. [ECF #25]. The decision of the Commissioner is affirmed.


**IT IS SO ORDERED.**

Florence, South Carolina  
September 6, 2018

s/ R. Bryan Harwell        
R. Bryan Harwell  
United States District Judge